IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HECTOR CORTEZ, R66371, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 25-cv-244-DWD |
| LATOYA HUGHES, BROOKHART, LT. LEARNER, JOHN DOE, M. RULOUBSUR, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Hector Cortez, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Lawrence Correctional Center (Lawrence) (Doc. 1). Specifically, Plaintiff challenges the adequacy of policies for prisoner transports during yard time, and he presents claims about an incident when he was attacked during a yard transport on May 13, 2023. Plaintiff has also filed a few motions, a letter, and an affidavit, that will all be addressed below.

The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief

may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that on May 13, 2023, he was being escorted thru the yard while restrained by handcuffs. (Doc. 1 at 7). He alleges that during the transit, another inmate approached him and stabbed him seven times. He became unresponsive and required off-site medical care at a hospital. After four days at the hospital, he was returned to the prison and was placed in the infirmary. Plaintiff faults Defendant Ruloubsur for violating his rights by refusing adequate after care for his wounds. Specifically, he claims she was informed that he was in unsanitary conditions and that his stitches were causing a problem, but she refused any treatment and did nothing to mitigate his pain. (Doc. 1 at 9-10).

Plaintiff faults Defendants Hughes (the director of IDOC) and Warden Brookhart from failing to create, implement, or enforce a sufficient policy to ensure that inmates can be safely transported during yard time. Specifically, he alleges the existing policy provides minimal deterrents to prevent an attack, and it does not set a minimum number of staff required to be on the yard during transports. (Doc. 1 at 7). He alleges that these defects led to the stabbing. Additionally, he faults Brookhart for responsibility for the prison's daily operations. He claims Brookhart failed to oversee staff doing yard escorts, he failed to ensure that staff were following a protocol to "wand" inmates who attended

yard, and he failed to ensure there was adequate staffing. All of which led to his attack. He characterizes Brookhart's actions as gross negligence. (Doc. 1 at 8).

On the day in question, Defendant Learner was directly responsible for wanding the inmates attending yard, and for supervising other staff working yard to ensure adequate staff members were present. He alleges Learner did not wand inmates, and did not ensure adequate staffing. He also faults Learner for failing to immediately intervene in the assault, thus allowing him to suffer greater damages. He contends if Learner had properly screened inmates coming to yard, a knife never would have made it onto the yard to be used in an attack. (Doc. 1 at 8). Plaintiff characterizes Learner's conduct as gross negligence. (Doc. 1 at 8).

As for John Doe, Plaintiff faults this individual for being the one who escorted him at the time of attack. He claims John Doe did not immediately respond to protect him from the attack. He also alleges that John Doe understands the policy that requires wanding prisoners, and even if he was not responsible for this part of the operations, he should have reported it was not being done or the yard was understaffed. He characterizes John Doe's alleged failure to protect him as gross negligence. (Doc. 1 at 9).

In support of the complaint, Plaintiff also submitted a memorandum of law that is largely consistent with his factual allegations. In the memorandum, he adds that the inmate who attacked him was known to be aggressive and violent. He claims that based on this known danger, the Warden and other prison staff should have done more to ensure he would not harm others. (Doc. 1 at 12-13). Plaintiff also submitted grievance documents, and medical documents.

He seeks injunctive relief in the form of proper treatment and rehabilitation for his physical and mental well-being, compensation, and a transfer to another state. (Doc. 1 at 15).

Based on the foregoing allegations, the Court designates the following claims:

**Claim 1:** **Eighth Amendment failure to protect or failure to intervene claim against Defendants Learner and John Doe;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant Brookhart for allowing inadequate staffing on yard and for failing to implement the wand screening policy for inmates attending yard;**

**Claim 3:** ***Monell* claim against Defendants Hughes and Brookhart for maintaining an insufficient policy to avoid attacks on the yard;**

**Claim 4:** **Eighth Amendment deliberate indifference claim against Defendant Ruloubsur for providing inadequate care for Plaintiff's wounds when he returned from the hospital.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

It is important to note at the outset that Plaintiff characterized the actions of Defendants Brookhart, Learner, John Doe, and Ruloubsur as gross negligence, but gross

negligence is not enough to establish a constitutional violation under § 1983. *See e.g. Tackett v. Dauss*, 132 F.4th 1026, 1030 (7th Cir. 2025) ("gross negligence does not equate to deliberate indifference."). Given that Plaintiff is a pro se litigant, the Court read his complaint more broadly and considered if his allegations could plausibly support more than a finding of mere gross negligence.

**<u>Claim 1: Failure to protect/intervene</u>**

To establish a failure to protect claim under the Eighth Amendment, a plaintiff must allege "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756. "[N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021). Related to the failure to protect, inmates may also allege that prison staff failed to intervene in an

ongoing assault. *See Eddmonds v. Walker*, 317 Fed. App'x 556, 558-59 (7th Cir. 2009). To establish such a claim, an inmate must allege the onlooker had a reasonable opportunity to intervene.

Here, Plaintiff's allegations of failure to intervene or failure to protect present a close call. He alleges that Defendant Learner was responsible for the yard that day and did not screen inmates attending yard with a wand, as was required by prison policy. He also alleges Learner did not ensure adequate staffing on the yard. He adds in his memorandum of law that the inmate who attacked him was known to be dangerous and had a history of extreme violence. The mere failure to follow a prison policy is not equivalent to a § 1983 claim. However, Plaintiff claims that by failing to wand inmates or to ensure adequate staffing, Learner fostered an environment that he knew to be unreasonably dangerous, because it allowed inmates to sneak contraband like a knife onto the yard. He claims the John Doe escorting him condoned this risk by not alerting other staff to the lack of wanding. He also faults Learner and John Doe for having inadequate staff on hand to ensure the yard escort was safe on May 13, 2023.

At this early juncture, Plaintiff's allegations are just enough to proceed. He suggests an environment that fostered danger amongst already dangerous inmates. The guards' failure to wand inmates to ensure safety on the yard could ultimately be negligence or deliberate indifference. *See e.g.*, *Mayoral v. Sheahan*, 245 F.3d 934, 938-39 (7th Cir. 2001) (reversing summary judgment and finding there was a genuine issue of material fact as to if officers knew of risks on unit posed by co-mingling gangs that led to an assault); *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018) (finding that guard's failure to

escort a known dangerous inmate back to his cell after releasing other inmates to dayroom was negligence at most); *see also Williams v. Hulick*, 2014 WL 1040953 (S.D. Ill. Mar. 18, 2014) (finding at summary judgment that inmate had insufficient evidence to demonstrate that the defendant-officer personally had knowledge of the danger posed by uncuffing another violent inmate in a cell with him while he was still handcuffed and could not defend himself from the subsequent assault). Here, Plaintiff's claim will likely turn on a fact-intensive determination about the knowledge that Learner and John Doe had on May 13, 2023, when overseeing yard and his escort.

Plaintiff may also proceed for now on the additional theory that Defendants Learner and John Doe failed to intervene during the assault. As with the failure to protect claim, this theory will also turn closely on the facts developed later in the case.

**Claim 2: Deliberate indifference by Defendant Brookhart**

Unlike the allegations against Learner and John Doe who were both present on the day of the attack, Plaintiff does not have any allegations that attribute personal knowledge of the risk to Defendant Brookhart prior to the attack. Knowledge of the particular risk posed either to Plaintiff, or by a particular assailant, is key to establishing a failure to protect claim. Plaintiff does not assert that Brookhart knew on May 13, 2023, or at any time prior, that the wanding procedure was not being used, that the assailant was present on yard during escorts, or that the yard was inadequately staffed to safely escort inmates. As such, Claim 2 is insufficiently pled to establish Brookhart's personal responsibility for the assault, and it will be dismissed without prejudice.

**Claim 3: *Monell* claim against Hughes and Brookhart**

Plaintiff alleges that Defendants Hughes and Brookhart caused him harm by failing to have an adequate policy in place to ensure inmate safety during escorts. Specifically, he claims that Hughes' currently policy on escorts provides "minimal deterrents" for inmate-on-inmate attacks at best. He faults the policy for not requiring a minimum number of staff to be present during high-risk escorts. He further faults Brookhart for failing to particularize the policy for the specific needs of Lawrence. Plaintiff's claims in this respect appear to sound under the *Monell* doctrine, which is often applied to hold officials liable for policies or the lack of policies. In the context of a *Monell* claim against a state prison employee, the claim is construed as one against the employee in his or her official capacity, and the relief available is limited.

The Eleventh Amendment generally bars private suits in federal court against a state for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). That immunity extends to state agencies as well and, subject to the *Ex Parte Young* doctrine, to state employees acting in their official capacities. *MCI Telecomm.*, 222 F.3d at 336–37 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). Under the exception outlined in *Ex Parte Young*, the Eleventh Amendment does not bar a lawsuit against an individual state official in their official capacity for an ongoing violation of federal law if the remedy sought is prospective injunctive or declaratory relief. *MCI Telecomm.*, 222 F.3d at 345 ("[A] private party may sue individual state officials in federal court to obtain prospective relief for an ongoing violation of federal law."). Here, Plaintiff seeks injunctive relief in the form of

appropriate treatment to recover his physical and mental health after the attack, but he does not seek any injunctive relief particularized to the inmate-escort policies (or the lack thereof) at the prison. Thus, he does not qualify for the only sort of remedy he might be eligible to receive from Hughes or Brookhart in their official capacities. Additionally, he has been transferred from Lawrence to Menard, which further negates the notion that he now needs protection via different policies at Lawrence.

The Court also considered if Plaintiff could recover against Hughes or Brookhart in their individual capacity for the issues he describes with the policy, but it is not persuaded his allegations are sufficient for any such recovery. As with Claim 2 against Brookhart, he provides no allegations that show Hughes or Brookhart knew the yards were understaffed for escorts, that the wanding policy was not being followed, or that a particularly dangerous inmate was on yard and posed a risk. He also does not provide any allegations whatsoever to demonstrate they had any reason to doubt his personal safety at the time of the attack. As such, his allegations are insufficient to attribute personal knowledge to Hughes or Brookhart, and he cannot proceed on Claim 3.

**Claim 4: Deliberate indifference against Ruloubsur regarding medical needs**

Plaintiff alleges that Defendant Ruloubsur refused to properly care for his wounds after he was returned to the hospital. He may proceed against Ruloubsur for the alleged failure to provide adequate care upon his return from prison, but he may not seek further injunctive relief against her concerning his ongoing care because he interacted with her at Lawrence and he his now at Menard.

## MOTIONS

On March 5, 2025, the Court denied Plaintiff's Motion to Proceed In Forma Pauperis because he had more than $800 in his inmate account. He paid $400.00 of the $405.00 filing fee on March 21, but also filed a new motion to proceed IFP on the same day (Doc. 7). In the Motion, rather than seeking a reduction in the fee, Plaintiff explains he has tried to forward the remaining $5.00. As such, the motion is really a notice, and not a request for any relief. Plaintiff also submitted a letter about the filing fee. (Doc. 8). The Court also notes the full $405 has now been received, so the Motion is **MOOT.**

Plaintiff also filed a Motion (Doc. 10) on April 14, 2025, complaining that two letters from the Court have been delivered to him already opened. An "inmate has the right under the First Amendment to send and receive mail... but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband." *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). The documents sent from the Court to Plaintiff and to the Court for filing are a matter of public record and therefore not confidential. See *Antonelli v. Sheahan*, 81 F. 3d, 1422, 1431 (7th Cir. 1996); *Martin v. Brewer*, 830 F. 2d 76, 78 (7th Cir. 1987). Thus, Plaintiff's request that the Court mark outgoing mail as "legal mail" to evade review must be **DENIED**.

In addition to the motions and letter, Plaintiff submitted an affidavit from a fellow inmate. (Doc. 9). The affidavit details a fellow inmate's interactions with Plaintiff over the years. The affidavit has no bearing on this order, so it will not be discussed further.

DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Learner and John Doe, and **Claim 4** survives against Defendant Ruloubsur. By contrast, **Claims 2 and 3** are insufficient to state a claim against Brookhart or Hughes in either their official or individual capacities. The Clerk is **DIRECTED to TERMINATE** Hughes.  By contrast, Brookhart shall remain in the case in official capacity only to help identify John Doe.

<u>**Plaintiff must file a notice within 21 days**</u> providing as much descriptive information as possible about John Doe, including a physical description, any known nicknames, shift assignment information, or any other information he has.  Once the information is filed by Plaintiff, <u>**Brookhart shall have 30 days to respond**</u>, and then <u>**Plaintiff shall have another 21 days to file a motion**</u> to substitute a named party or to describe additional steps that can be taken to identify John Doe.  Failure to do so will result in the dismissal of John Doe.

The Clerk of Court is **DIRECTED** to prepare for Defendants Learner, Ruloubsur, and Brookhart (official capacity to identify John Doe and for injunctive relief): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the

Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court **shall enter** the standard HIPAA protective order.

Plaintiff's Motions (Doc. 7 and 10) is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 8, 2025

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge


**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.


The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.

Case 3:25-cv-00244-DWD   Document 11   Filed 05/08/25   Page 14 of 14   Page ID #73